We'll turn to our last case of the day, 25-7076, Robinson v. Town of Okay. Mr. Vasquez. May it please the Court, Marco Vasquez with the appellants. The Fifth Amendment requires the government to pay compensation when it takes your property. Until the government pays with money, you have an ongoing injury. For the Robinsons, the promise of compensation was broken. So we brought two set of takings claims under the Fifth Amendment. The first says that the Okay Public Works Authority took the Robinsons' property and hasn't paid for it. That's a classic Fifth Amendment claim. The second says that the Town of Okay created an entity that has the power to take but no ability to pay. That's also a constitutional violation because you can't split the duty to pay and the power to take. Because the district court dismissed these claims in the pleadings, this court should reverse. The first claim, you've got a question of statute of limitations, right? It does not, Your Honor. It does not have a question of statute of limitations because under the Supreme Court's decision in Williamson County, the Fifth Amendment claim didn't exist until the state process ends. For us, that didn't happen until March of 2023, and we never had the opportunity to bring the Fifth Amendment claim until then. But the more recent Supreme Court decision doesn't say that. It says your claim arises upon the taking. So that discusses when there's a constitutional issue. You're talking about Nick. Nick talks about when there's a constitutional injury. It doesn't talk about when the clock starts ticking. That's a different question. And for that, we looked at decisions like Herrera v. City of Espanola that asked when there's a complete and present cause of action. For us, under Williamson County, we started under Williamson County. We were in this unique situation where we started in Williamson County, we did everything the Supreme Court told us to do. We went to state court, we asserted state claims, and we won. Well, but then the court said you didn't have to do them, right? So why doesn't the claim accrue at that point? At the point of Nick, Your Honor? Yes. It doesn't accrue at the point of Nick because it wouldn't make sense given where we were in the procedural posture. So I'll back up and explain. Well, but that's fact-specific to you is what you're saying. Nick doesn't apply to you because you were too far into the process. Nick applies going forward as far as when the injury occurs. But the difference is that we had just won under the Oklahoma Constitution. Four weeks later, after the state court entered its judgment, the Supreme Court issued Nick. Then OK appealed. And so we were through that process. And so really the point is that no civil rights plaintiff would think at that point that we needed to assert a separate federal lawsuit to preserve Fifth Amendment claims based off facts we didn't know. And that's why there's no district court decision to have addressed these type of issues that's endorsed that. And that's not a position that OK invokes here. Their argument is that our claims accrued in 2009, and that's not possible for two reasons. Separating the claims, there's the classic takings claim that couldn't have accrued in 2009 because of Williamson County, but also the other claim against the town of OK that couldn't have accrued until 2023 because we didn't learn about it and we couldn't have learned about it. And, no, I understand. You didn't know about the fraud is what you're saying, the alleged fraud. We didn't know about the unreasonable guesswork. Yeah, but on the first, I'm sorry, back to your first claim, the decision comes out of the Supreme Court, and then you're saying the light bulb wouldn't go off for you because you were in the middle of appellate proceedings? Yes, Your Honor. There was no complete and present cause of action during that appeal process because that was a judgment that OK had appealed. And so we had no reason to think that there was a Fifth Amendment problem in that respect going forward. And so we were really midstream under Williamson County. And the point is that civil rights plaintiffs shouldn't be punished for following the process that at every step of the stage we did exactly what the Supreme Court told us to do. So there's no statute of limitations issue. But turning to the merits, because OK's main argument to avoid the merits is the Supreme Court's decision in Folsom, and that's a decision from the 1800s. But that case is about a property interest and a judgment. But we're not asserting a property interest and a judgment. We're asserting a property interest and real property. So Folsom doesn't apply that. Well, what about the Fifth Circuit's decision in Arion? Why wouldn't we just do that? It seems like we can get past the statute of limitations issue spotted in your favor, perhaps. But on the merits, what is wrong with that decision, with the Fifth Circuit's approach? Or what's different about your case that counsels against applying it here? Yes, Your Honor. There are a few differences between our case and Arion. In Arion, the plaintiffs didn't raise a claim for the underlying physical taking. That's what we do. In Arion, the plaintiffs didn't raise a claim for creating an entity that has the power to take but no ability to pay. That was never before the Fifth Circuit. And so in those respects, Arion doesn't address the issues that are before this court. Again, we're only asserting a property interest and a judgment, not a property interest. A property interest and real property, not a property interest and a judgment. That was a second taking. The theory was there's a second taking. We don't raise that theory where there's one taking, and that was the original one. So Arion is not an obstacle. So neither Arion or Folsom address the issues before this court. Wait, wait, wait. Your only claim is that there's one taking. And the Supreme Court said in Nick, let me get the language, the Fifth Amendment right to full compensation arises at the time of the taking. Yes, Your Honor. And under Oklahoma, there's a two-year limitations period. So any claim of any sort challenging that taking would have to arise, would have to be filed within two years of that taking. We still have to look at when the claim accrued. So that described the rule going forward, yes, but it doesn't describe it. It doesn't say prospectively only. It says that's when the claim arises. The claim arises but not when the clock starts ticking. That's a distinction I'm not familiar with. Sure. So in my mind, kind of hypothetical I think of is let's say you're taking a trip six months to a different state, and your property is there, and the government comes and destroys parts of your property, but you didn't have any reason to know about the destruction of your property until you got back. There was no notice, no neighbor to call to tell you the government didn't show up. You're saying there's a discovery rule? Yes, Your Honor. Well, the Supreme Court doesn't suggest any sort of tolling, any discovery rule or anything like that. It says the claim arises when there's a taking. So I misunderstood you. I thought that your second claim, the conspiracy claim, was that there was a second taking, but you're saying there's only one taking that you're claiming here. That is correct, Your Honor. There's only one taking. How do you get around the Supreme Court's statement that the claim arises at the time of the taking? For two reasons. One, because we were going through the process, as I explained before, but two, we didn't learn about the arrangement, the facts giving rise to our second claim until 2023, when the OK Public Works Authority revealed for the first time that they don't have any money because it's funneled from – it goes into a bank account controlled by the town. But isn't that a tolling theory? Isn't that fraudulent concealment? So we raise equitable tolling and fraudulent concealment, Your Honor, and that's why district courts – we've had a number of the district court decisions on pages 26 to 27 who have dealt with not exactly the same situation when you win under Williamson County, but similar circumstances in which they said – one district court, Donnelly, for example, said the claim couldn't start accruing until the Williamson County process ended, but the other district court decisions that have addressed this issue said in any event, equitable tolling applies. And equitable tolling is when a civil rights plaintiff has diligently pursued his or her rights and then something extraordinary stood in their way. And for us, we diligently pursued our rights. There's no question about that. But what stood in our way was the Supreme Court's decision in Williamson County that was odd and wrongly decided and improperly overturned, but we had to go through that process. And so really the point of Nick was to make it easier for civil rights plaintiffs or taking plaintiffs to come to federal court to assert those claims and not to sort of hamper those who were following the process and going through it. I might be missing your answer, but in what way do you rely on fraudulent concealment to toll in your favor in this case? We rely on fraudulent concealment with respect to our second set of claims against the town, writing, creating an entity that has the power to take but no ability to pay. That's because we had no basis to know about this arrangement until March of 2023. And the reason is because residents, the O.K. Public Works Authority, they send bills to residents, and residents write checks in response to the O.K. Public Works Authority and pay them for the services that they provide. And in the town's audit reports, it has Public Works Authority Enterprise Fund that lists revenue for providing services. And so any reasonable person would see I'm paying an entity that provides services, writing checks to them, they're providing me their services, and they're representing to the public, so far as I know, that there's revenue for this. What we didn't learn about, that's actually not the case until March of 2023. And where do you invoke that? Do you plead it? Do you plead fraudulent concealment tolling? Is that part of what should be discerned from your complaint? Yes, Your Honor. We do plead. We discussed that in our briefs before the lower court, and we discussed that before this court as well. You said there's a difference when you have a government agency that has the power to take but not the ability to pay. Yes. That's exactly what the situation was in Folsom, was it not? The municipality, or I can't remember what entity the defendant was, took the property, but the state statute essentially prohibited it from, or prevented it from paying compensation. They could only tax enough to take care of their ordinary expenses. They couldn't tax enough to pay takings claims. So how is that different from your situation? As I take what you're saying, you don't have to sue, or you're still being, there's still a continuing taking as long as they don't pay you for the taking. So Folsom is different in two main respects. Folsom doesn't talk about takings. That was not a takings clause case. That was about a contracts clause and the due process clause. So in that respect, it was different. The difference that we have between Folsom The due process was taking property without due process. Wasn't that what the due process issue was? Property interest in a judgment, Your Honor. That was the issue in Folsom, property interest in a judgment. But it wasn't about a taking. The court didn't analyze this under the Fifth Amendment takings clause of that framework. But in the second respect, Folsom doesn't govern here because Folsom wasn't about a separate entity that was created with part of the power of the, part of. What difference does that make? It makes a big difference. The point is that the state created an entity that could take but wasn't able to pay. Here, it's the municipality that accomplishes the same thing. The difference in that explanation, Your Honor, is that this was an entity that was created with the eminent domain power, but no ability to pay at all going forward. So that's the problem. It may be a harder question when insolvency later down the road. That may be a different question. But what we have here is an entity that was created with the power, part of it, the power of no restriction. This is what the Supreme Court has told us. It's a mandatory duty. It can't be manipulated. It can't be sidestepped by state law. And I point the court to the First Circuit's decision in financial oversight that we said in our brief. And in that case, the First Circuit explained that you can't extinguish or avoid a taking clause duty or responsibility through federal bankruptcy law. This is a duty that's required. And so if you can't do that through federal bankruptcy law, then you can't do it through state trust law either. And that's consistent with what the Supreme Court just told us in Tyler v. Hennepin County. State law is not dispositive. And the reason it's not dispositive is because if it were, the state could sidestep the taking clause requirement, which is what's happening here. You described the First Circuit case as an extinguishment? Yes, Your Honor. Well, here the debt isn't being extinguished. It just can't be paid. This isn't a debt. It's still a judgment. You're not vacating the judgment in any way in this case. The city hasn't done that. It's still got a judgment against it. It wasn't vacated. Am I missing something there? Yes, Your Honor. It's not a debt. It's a duty. It's a duty to pay just compensation under the Constitution. It's not like other debts. And, you know, in this case, that's the fundamental difference. And I see that my time is getting low, so I'd like to reserve the remainder of my time for rebuttal. May it please the Court, my name is Max Harris. I'm here as the attorney for the Appalese Town of O.K. and the O.K. Public Works Authority. So we have got multiple issues here. But the state court ultimately determined that the public works authority is liable and that the town is not liable. The town was dismissed with prejudice based on a motion to dismiss that was filed, and there was no appeal filed regarding the town. Yet they've sued the town anyway in federal court. There's no judgment against the town whatsoever. Another issue is, as I mentioned, so there's no federal subject matter jurisdiction here. The court is hitting the nail on the head because these issues were addressed by Folsom and Aryan both. The Folsom court basically determined that, yes, when you obtain a judgment against a state court entity and you can't collect it as long as you have that ability to collect, as long as there's a pending liability against the state entity, there's no constitutional violation there. In fact, in Folsom they stated that a party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it. Again, as long as there's that existing liability, which we have here, I mean, no one has testified or I'm not aware of any evidence that says that the authority will never pay the judgment. It just hasn't been paid yet. I don't know whether what they're going to do or what they plan to do to try to collect on the judgment, but there is, in fact, a judgment in place. Why isn't the distinction that the appellant draws about Folsom persuasive, that that case wasn't about the Fifth Amendment? It wasn't about the Fifth Amendment. It was about the Fourteenth Amendment, but it was basically the same exact thing. It was dealing with damages to property is what they talked about in Folsom, and they said, you know, even though you can't collect, it's still not a violation, so it's very similar. But then when you look at the Aryan case, the facts are remarkably similar. In Aryan, as the Court is aware, you basically had this taking, and they couldn't collect. It was basically, I would say, virtually impossible to collect because there was a law that basically said that the plaintiff could not collect their judgment in that case unless the governmental entity voluntarily paid, and yet they still said, and it was a Fifth Amendment claim. It was the exact same claim that the plaintiffs bring here, and they said that, in short, a party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it. They cited to Folsom, and then they said, thus, plaintiffs claim that their property has been taken by the SWB's failure to timely pay must fail under Folsom. So they look just, I mean, virtually identical claims to what we have here. The Fifth Amendment claim, and they relied on Folsom, the Fifth Circuit did, and stated, yeah, this is not a Fifth Amendment violation claim. And so that case is very on point. In fact, the issue they even set forth, obviously, in Folsom, and they say, finding themselves in this position, the plaintiffs in this case, like others before them, have turned to the federal courts to force payment of their state court judgment. They claim that the defendant's failure to timely satisfy a state court judgment violates the takings clause of the Fifth Amendment. The district court granted the defendant's motion to dismiss, applying long-standing precedent, that there is no property right to timely payment on a judgment we agree and affirm. Again, the cases are virtually identical. Interestingly enough, in Arien, they also distinguish Nick and Williamson County, and they talk about in those cases it was based on when you could bring a claim. It did not create a claim. In fact, in Arien at 29 Federal 4th at 231 to 32, they say that whether a claim is ripe for federal adjudication as Williamson County and Nick decided is very different from whether certain facts state a claim at all. So no matter how the, and they've gotten creative. I'll give them credit. The plaintiffs have gotten creative in this case and, of course, tried to work around the Arien and Folsom cases, but in reality, they are virtually identical. Except here, you don't have the impossibility of collection on the judgment. It's just whether they can collect. But, again, it's completely irrelevant. There is a statute of limitations issue, as Judge Hartz mentioned. It is a two-year statute of limitations, and you're exactly right. The claim accrued back in 2009 when the taking occurred. They did get their day in court. They got their day in court. They were before a jury. Again, as I stated earlier, the town was dismissed with prejudice and never appealed, and, of course, they got a judgment against the PWA. And so we've got the, and there's no basis to toll here for the reasons I think that Judge Hartz said as well. But here, another issue that we have lurking in the background wasn't decided by the district court, but I think it's squarely in front of this court anyway because, of course, this court is aware that you can rule. You could affirm the district court for any reason based on the record before the court. An issue we raised was that you can't assign, you couldn't, the judgment in state court is held by Vicki Barnett. In the complaint filed in the federal case, the plaintiffs, the Robinsons, claimed that Vicki Barnett assigned that claim to them. That is barred under Oklahoma law. That's barred under 120S-2017-D, and it's written in our brief. But 2017-D literally states the assignment of claims not arising out of contract is prohibited. At the district court level, the Robinsons raised another statute that came much earlier than the statute that I just read to you regarding why they believe this assignment issue didn't apply here. Of course, the district court didn't apply it, but here we have a claim that does not arise out of contract, and therefore it is, of course, prohibited. This is just yet another independent basis. Let me ask you about that. Go ahead. Title 60, section 313 says, a thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner. Why is this not a thing in action? Well, that case, as I mentioned, was decided. That's a statute. I'm reading from a statute. I apologize. I meant to say that statute was promulgated much earlier than the 2017-D statute, and there's no mention of any kind of exception for what you mentioned. Generally, we try to reconcile. We try to make, if there are two statutes that are somewhat different, we try to reconcile them and maybe say, for example, one is the more specific, the one about assigning things in action might be considered the more specific, so it survives the enactment of a more general statute. Did you address this thing in action, Title 60, section 313? Did you address that? We did at the district court level. Again, the district court didn't rely on that, but I'm just telling the court that's another basis here. And your argument in the district court, am I correct that you didn't mention that in your brief on appeal? I did not. Okay. I didn't mention the other statute. I don't believe I did. But your argument in district court, was that section, I'll just call it section 313, was voided by the later statute? Was that essentially your argument? I don't know if it was voided, but I think that the 2017-D statute is very specific because it literally eliminates the assignment of all claims not arising out of contract. It doesn't get any more clear than that. We say that any claims arising out of contract can be assigned. Anything else cannot be assigned. Do you have any other questions for me? No, I don't. Okay, thank you. Thank you. Okay, counsel, you have a minute or so. Thank you, Your Honor. We plead fraudulent concealment on paragraph 157 of our complaints to follow up with the court's question. We're not asserting a property interest in a judgment, no matter how hard O.K. tries to insist that. We're not doing that, and I would point this court to its decision in Y.O. Ben, which we cite in our briefs. We have to look at the claims that the plaintiff's actually raising, and we're not asserting a property interest in the judgment. Fundamentally, the problem with this arrangement is that the town pays the Public Works Authority's bills when it feels like. So, for example, the town would write a check to pay the Public Works Authority's attorneys, but it won't write a check to pay just compensation, and that's wrong. And it's wrong because the Supreme Court has told us in recent cases like Nick and Tyler v. Hennepin County that this is a mandatory duty. You can't escape it. You can't avoid it. You can't look to state law exclusively to sidestep the takings clause requirement, but that's what they're doing here. And that's why last year this court said its role is to ensure just compensation, and this appeal is an opportunity to do just that. And so the Robertsons respectfully ask this court to reverse the district court's dismissal on the pleadings. Thank you. Let me ask you, do you have any other ways of using the judgment? Can your client refuse to pay the water bill, for example, and say it's an offset from the judgment? Or have you tried to go into state court and get an order that money received by the agency shouldn't be turned over to the city but should be used to pay this first? Are there any other ways you can use that judgment to your advantage? Not that I'm aware of, Your Honor, but I think the key inquiry is whether or not if Fifth Amendment claims and we do, and Nick, and going back to cases like Hick v. Humphrey, guarantee a federal forum for the adjudication of our constitutional rights. Again, these are Fifth Amendment claims that have never been adjudicated and could never be adjudicated until now, and that's why we're asking this court to reverse. Thank you. Thank you, counsel. Thank you, counsel. Case is submitted. Counselor excused.